**UNITED STATES of America,**
**Appellee/Cross–Appellant,**

**v.**

**Stanley Charles STEWART,**
**Appellant/Cross–**
**Appellee.**

**Nos. 91–2043, 92–1003.**

United States Court of Appeals,
Third Circuit.

Argued Aug. 17, 1992.

Decided Oct. 9, 1992.

Sur Petition for Rehearing Nov. 4, 1992.

---

Claire J. Rauscher (argued), Asst. Defender, Elaine DeMasse, Sr. Appellate Counsel, Maureen Kearney Rowley, Chief Federal Defender, Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant/cross-appellee Stanley Charles Stewart.

Ann Campbell Flannery (argued), Asst. U.S. Atty., Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee/cross-appellant U.S.

Before: HUTCHINSON, COWEN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal the prosecution contends that the defendant's sentence should have been enhanced under the terms of the Career Criminals Act, 18 U.S.C. § 924(e)(1). The district court held that some of the predicate convictions were flawed and could not be used to justify the mandatory minimum sentence. We conclude that three of the convictions were valid and require that we remand for resentencing.

Defendant was found guilty of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). Asserting that he had been convicted on four previous occasions of crimes of violence, the government asked for the imposition of a mandatory minimum sentence of 15 years under the provisions of the Career Criminals Act. Defendant asserted that some of those prior convictions were constitutionally defective.

At the sentencing hearing, the district court accepted the defendant's argument in part, finding that one of the prior guilty pleas was "weak/flawed in relation to the *Boykin* case" and that another guilty plea

was "an old matter." The court did not impose the mandatory minimum sentence, but instead departed upward from the Federal Sentencing Guidelines and imposed a ten year period of incarceration. Both defendant and the government have appealed.

## I.

■ Undercover drug enforcement officers were conducting a surveillance on Tasker Street in Philadelphia, Pennsylvania, on March 10, 1988, when they observed defendant park an automobile and then remain in the vicinity for approximately one and one-half hours. He cleaned out the car, spoke to people in the area, and at one point knocked on the door of 1439 Tasker Street, the residence that the agents were watching. Defendant then returned to his parked car, but continued to look in the direction of 1439 Tasker Street, as well as up and down the street. When officers approached the vehicle, one of them saw a .22 caliber revolver laying between the defendant's legs. The agents seized the weapon and found that it was loaded.

At an *in limine* proceeding, the court directed the prosecution not to refer to "drugs and drug transactions." During the government's closing argument to the jury, the prosecutor asked rhetorically: "Isn't that where you would have a gun if you were sitting acting as a lookout ...?" Defense counsel immediately moved for a mistrial, but the court denied the request.

As one of his grounds for appeal, defendant contends that the government's use of the word "lookout" was unfairly prejudicial and violated the trial judge's *in limine* ruling. We are unable to agree. The trial judge, who was in a far better position than we to weigh the effect of the prosecution's argument, did not find it necessary to take any corrective action. Moreover, we do not find that the prosecutor's remark violated the judge's pretrial admonition, although it came close. In circumstances such as these, we defer to the discretion of the trial judge and, in that light, we find no basis for the grant of a new trial.

## II.

The principal issue on this appeal is the sentence. The question is whether the defendant's four prior convictions can serve as predicates for enhancement under the Career Criminals Act.[1] The four convictions were: (1) a non-jury trial resulting in a guilty finding on June 21, 1972, in the Delaware County Court of Common Pleas, Pennsylvania (Nos. 445 and 447 May session 1970); (2) a separate case in the Delaware County Court of Common Pleas (Nos. 210 and 211 March session 1972) in which defendant pleaded guilty on March 10, 1972; (3) a guilty plea in Montgomery County, Pennsylvania, on April 24, 1972 (Nos. 158, 159, 160 and 161); and (4) a guilty plea in Atlantic County, New Jersey, on October 7, 1975 (No. 199–71–S). Defendant does not contest the Delaware County conviction resulting from the nonjury trial. The guilty plea proceedings will be discussed seriatim.

## III.

At the Delaware County plea on March 10, 1972, defendant appeared with counsel and admitted burglarizing a Strawbridge & Clothier's store. He acknowledged that he knew he had rights to a trial by jury, to refuse to testify, to confront and hear witnesses against him, and to appeal from the sentence. He was advised of the maximum sentence that could be imposed. Defendant stated that he understood that he was admitting guilt, that his statements were voluntary, and that he had not been coerced to enter his plea nor promised any particular sentence. The court also heard testimony from police officers on the details of the burglary and the defendant's apprehension at the scene.

---

**1.** 18 U.S.C. § 924(e)(1) reads in pertinent part: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ... and such person shall not be eligible for parole...."

■ Defendant now asserts that the plea was faulty because the court failed to inquire into his mental health status and history of drug abuse. In *United States v. Cole*, 813 F.2d 43, 45–46 (3d Cir.1987), we set aside a guilty plea because the trial judge failed to make further inquiries about the defendant's competency after he admitted ingesting drugs the night before the plea took place. That case is distinguishable from the Delaware County case where nothing about drug abuse was brought to the attention of the trial judge. Although the practice in federal courts, generally, is to inquire about drug ingestion, in the absence of any notice to the court, there is no constitutional obligation on the states to make such an inquiry. We conclude that the Delaware County guilty plea was constitutionally valid and could be considered for enhancement purposes.

## IV.

Although the Delaware County plea proceeding was comprehensive, the one in Montgomery County on April 24, 1972, some six weeks later, was less thorough. During the plea colloquy, defendant answered affirmatively when asked if he was satisfied with defense counsel's representation. He stated that he understood he was charged with burglary, that the maximum sentence was ten years, that coercion had not led to the plea, that he had the right to a jury trial, and that he admitted the charges. The court did not ask whether defendant was aware of his rights of confrontation and cross-examination, and his privilege against self-incrimination. At the hearing, police officers testified about the facts of the offense.

In *Boykin v. Alabama*, 395 U.S. 238, 239, 89 S.Ct. 1709, 1710, 23 L.Ed.2d 274 (1969), the Supreme Court, in a direct appeal, considered the validity of a guilty plea in which "[s]o far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." The Court found plain error in the trial judge's failure to develop an affirmative showing that the plea was intelligent and voluntary. *Id.* at 242, 89

S.Ct. at 1711. The Supreme Court made it clear that it could not presume from a "silent record" a waiver of three important constitution rights—the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243, 89 S.Ct. at 1712. The trial judge was to make certain that the accused "has a full understanding of what the plea connotes and of its consequence." *Id.* at 244, 89 S.Ct. at 1712.

In a series of post-*Boykin* cases, several Courts of Appeals have held that the Supreme Court did not specify a mandatory litany and the failure to advise a defendant of each right does not automatically invalidate the plea. *See United States v. Simmons*, 961 F.2d 183, 187 (11th Cir.1992); *United States v. Henry*, 933 F.2d 553, 559 (7th Cir.1991); *Neyland v. Blackburn*, 785 F.2d 1283, 1287 (5th Cir.1986); *United States v. Freed*, 703 F.2d 394, 395 (9th Cir.1983); *see also United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (collateral attack under Rule 11 of the Federal Rules of Criminal Procedure).

■ The ritual of the colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences. In *United States v. Simmons*, the Court noted that the trial judge could adequately advise the defendant of the consequences of a plea without obtaining express waivers of the right of confrontation and that against compulsory self-incrimination. 961 F.2d at 187.

In this type of case, as in many others, the outcome is often determined by the allocation of the burden of proof. *Boykin* is not helpful on this point despite its reference to a "silent record." Two Courts of Appeals have placed the burden on the party seeking to impugn the validity of the record—a variation on the presumption of regularity attributable to official records.

In *United States v. Ruo,* 943 F.2d 1274, 1276 (11th Cir.1991), the Court said flatly: "To avoid sentence enhancement under § 924(e), the burden is properly placed on the defendant raising the challenge to show the constitutional invalidity of the prior convictions.... It would approach the absurd to require the government to undertake to prove guilt all over again in every predicate conviction." *See also United States v. Ferguson,* 935 F.2d 862, 866–67 (7th Cir.1991). We accept the holdings of those two Courts as being in accord with general principles of law and resting on pragmatic grounds as well.

Another line of precedents also comes into play. In *United States v. Henry,* 933 F.2d 553, 560 (7th Cir.1991), the plea colloquy did not include any discussions of the privilege against self-incrimination. The Court, nevertheless, found that, "[b]ased on the totality of the circumstances, the 1973 plea was both voluntary and intelligent, particularly in light of the fact that Henry had ample exposure to the workings of the criminal justice system." *Id.*

In *United States v. DeForest,* 946 F.2d 523 (7th Cir.1991), the Court took a similar approach where the trial judge did not give the required constitutional warnings in a pre-*Boykin* plea, but had asked the defendant about his prior convictions, education, mental state, the maximum penalty, and the facts of the offense. Concluding that this was adequate, the Court of Appeals said: "The voluntariness of the plea was even more apparent in view of the fact that DeForest's prior convictions gave him some familiarity with the criminal justice system, and his change of plea after a trial and conviction showed an awareness of the right to plead not guilty." *Id.* at 526.

That same Court, however, expressed reservations over a post-*Boykin* plea where essentially the same facts and style of colloquy were involved. Because that predicate offense, however, was not necessary to establish the required number of convictions for enhancement purposes, the Court did not decide whether that plea was adequate. *Id.* at 527; *see also Neyland v. Blackburn,* 785 F.2d 1283, 1287–88 (5th Cir.1986) (plea voluntary although all *Boykin* rights not explained).

In sum, a defendant has the burden of persuasion to establish that a plea was neither intelligent nor voluntary. However, the failure to specifically articulate the *Boykin* rights does not carry the day for the defendant if the circumstances otherwise establish the plea was constitutionally acceptable.

The circumstances surrounding the Montgomery County plea are significant. Just six weeks earlier in Delaware County, defendant had the benefit of an extensive guilty plea colloquy in which the *Boykin* rights had been discussed on the record. He therefore came to Montgomery County somewhat experienced in this phase of criminal law administration.

As part of the Montgomery County proceeding, the police officers testified about the defendant's arrest at the scene of the burglary after having been seen in possession of stolen articles, evidence that established a very strong case for the prosecution similar ·to that in˙ Delaware County. Defendant did not controvert the testimony establishing his guilt and, in fact, he admitted participation in the crime. In these circumstances, we are confident the defendant's plea was knowing and voluntary in any realistic sense. Defendant did not demonstrate actual lack of knowledge or coercion, subtle or otherwise. We conclude, therefore, that the Montgomery County conviction is a proper predicate offense for enhancement purposes.

## V.

Our determination on the Montgomery County plea makes it unnecessary for us to resolve the questions over the 1975 plea in New Jersey. It is clear, however, that the district court erred in dismissing the conviction because it was "old." *See United States v. Preston,* 910 F.2d 81, 89 (3d Cir.1990).

To validate the New Jersey conviction, the government offered the docket entries and a proffer that the rules and practice of the New Jersey courts require a proper

*Boykin* colloquy. Some cases have found evidence of a court's custom and practice adequate to determine that a plea was voluntary and intelligent. *See United States v. Polk*, 908 F.2d 212, 214–15 (7th Cir.1990); *United States v. Dickerson*, 901 F.2d 579, 583 (7th Cir.1990).

As a general rule, trial courts since *Boykin* have sought to make the voluntariness of a guilty plea appear from the record. However, a survey of reported cases will show that the mere existence of a rule of practice and courts' attempts to comply with that rule does not always result in error-free colloquies. For example, in .the Montgomery County plea, the court was governed by *Boykin*, but the colloquy there left something to be desired. In any event, we leave this troublesome issue to another day.

### VI.

We conclude that the district court erred in not finding three of the prior convictions valid for sentence enhancement. We cannot but feel that the district judge's view of the prior convictions was influenced by the harsh minimum sentence of 15 years without parole that the statute requires. That is understandable in the circumstances here where the prior offenses had occurred more than 15 years earlier and, although technically "violent" crimes, did not actually involve violence on any individual. The offenses were burglaries of commercial establishments, in two instances involving property of relatively small value.

Considering all of the factors, the sentence of ten years imposed by the district judge was substantial and reasonable. Although justice might have been better served had the matter been left to the discretion of the district judge, we are shackled by the statutory terms and must, therefore, remand for resentencing.

The judgment of the district court is vacated and the case is remanded for re-sentencing.

* Hon. Joseph F. Weis, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third

---

### SUR PETITION FOR REHEARING

Nov. 4, 1992.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and WEIS,* Circuit Judges.

The petition for rehearing filed by Stanley Charles Stewart in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.